THE STATE OF NEW JERSEY, RESPONDENT, v. ALFRED GREINER AND OTTO GILBERT, APPELLANTS.

Submitted March 17, 1921—Decided July 12, 1921.

1. The fact that payments made to an overseer of the poor, in pursuance of an order of filiation, exceed the penalty of the bond, does not release the principal, nor his surety, in case of default in its condition.

2. Where an order of filiation has been made under the provisions of "An act for the maintenance of bastard children," so long as the child is chargeable to the city, the obligation of the father to pay the sum adjudged continues.

---

On appeal from the District Court of Hoboken.

Before Justices TRENCHARD, MINTURN and KALISCH.

For the appellants, *Weller & Lichtenstein.*

For the respondent, *Horace L. Allen.*

The opinion of the court was delivered by

KALISCH, J. The uncontroverted facts are that an order of filiation was made on the 10th day of February, 1911, by the recorder of the city of Hoboken, requiring Otto Gilbert, a co-defendant, who was adjudged to be the putative father of a child born unto Lena Wendt, to pay to the overseer of the poor of the city of Hoboken the sum of $2.50 weekly and every week for and toward the keeping, sustenance and maintenance of said child, and during so long a time as the said bastard child shall be chargeable to said city. To secure the performance of the order a bond was entered into by said Louis Gilbert, as principal, and Louis Greiner, as surety, to the State of New Jersey in the sum of $500; that for several months after the execution of the bond Gilbert paid to the overseer of the poor the weekly payments required to be paid by the order of filiation, by paying $10 monthly, and then ceased to make any further payments; that Greiner, the surety, was notified by the overseer of the poor of his principal's default and thence the payments of $10 monthly were made by Greiner; that afterwards—that is, after the latter signed the bond, as surety, Gilbert gave Greiner $500, which, to use the language of Greiner, was, "For to pay out ten dollars a month;" that he not only paid the $10 monthly and until the $500 given him by Gilbert was exhausted, but that he continued to pay about $100 more than he received.

Upon the state of facts as above recited appellants' counsel moved for a direction of a verdict for the defendant Greiner, which was denied, and we think properly so.

The contention of appellants' counsel in the court below was, and here is, that the bond had been discharged by payment. The case is barren of any proof that when the surety paid monthly $10 to the overseer of the poor, the former made

payments on account of the penalty of the bond and that the latter received them as such.

The testimony as to the manner in which the payments were made, and the proven facts above summarized, do not permit any inference that the payments by the surety were made by him in any other capacity than that of an agent acting for and in behalf of his principal and for the sole purpose of complying with the order of filiation, which was a condition of the bond, and thus prevent a breach which would have entitled the state to a judgment for the penalty.

As a legal proposition, the fact that the payments made to the overseer of the poor, in pursuance of the order of filiation, exceed the penalty of the bond in case a default be made in its condition, does not release the principal nor his surety.

The condition of the bond must be read, as was said by Chief Justice Beasley, in *Inhabitants of New Providence v. McEacheron et al.,* 33 N. J. L. 339 (at p. 340), in connection with the provision of the statute creating the duty or obligation.

Applying this sound legal principle to the case *sub judice,* we find from a reading of section 9 of the act entitled "An act for the maintenance of bastard children" (*Comp. Stat., p.* 184), that the bond to be given by the putative father shall be conditioned that he will comply with the order of filiation made against him, which order in the present case required the father to pay $2.50 every week toward the maintenance of the child and during so long a time as the bastard child shall be chargeable to the city of Hoboken.

It is, therefore, quite obvious that so long as the child is chargeable to the city just so long the obligation of the father to pay the sum adjudged continues. When the father makes default in that duty, the state becomes entitled to exact the penalty of the bond.

Section 18 of the act, page 189, provides a procedure on a bastardy bond which has been breached, which procedure appears to have been adopted in this case.

The cases of *Tunison* v. *Cramer,* 5 N. J. L. 498, and *Roll* v. *Overseers of the Poor, Id.* 493, cited on brief of counsel of

appellant in support of their contention, do not apply to the facts of the present case, but the legal principles therein laid down are in harmony with those herein expressed.

Judgment is affirmed, with costs.